## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JOHN C. CHEEKS, et al.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 14-cv-00914-RCL** |
| | ) | |
| **FORT MYER CONSTRUCTION** | ) | |
| **CORPORATION, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

This case concerns allegations brought by plaintiffs John C. Cheeks, Cheeks of North America, Inc. ("CNA"),[1] and Juanita Gallardo of a vast bid rigging conspiracy undertaken by numerous defendants participating in a Racketeer Influenced and Corrupt Organizations Act ("RICO") enterprise.  On October 17, 2014, this Court granted several motions to dismiss, thereby dismissing nineteen defendants from this action, and ordered plaintiffs' to file a motion for leave to amend their Complaint in response to the remaining defendants' motions for a more definite statement.  Plaintiffs have now moved three times for leave to amend their already amended complaint.  Currently pending before this Court are plaintiffs' Motion for Leave to File a Third Amended Complaint, ECF No. 103, plaintiffs' Motion for Leave to File a Fourth Amended Complaint, ECF No. 118, and plaintiffs' Cross Motion for Order to Show Cause as to Evidence

---

[1] One of the insurance defendants in this action is named either CNA Surety or CNA Financial.  These entities are not associated with plaintiff Cheeks of North America, which is referred to simply as CNA.  When this Court discusses the insurance defendant, it will refer to it as either CNA Surety or CNA Financial.

Adduced Supporting RICO Existence and Violations of Law, ECF No. 127.  Due to the existence of plaintiffs' Motion for Leave to File a Fourth Amended Complaint, plaintiffs' Motion for Leave to File a Third Amended Complaint will be denied as moot.  For the reasons stated below, plaintiffs' Motion for Leave to File a Fourth Amended Complaint will be denied.  In addition, the Court finds that plaintiffs have failed to show cause as to why defendant CNA Surety should not be dismissed, and has not shown why previously dismissed insurance defendants should be added back in to this action.  Plaintiffs' Motion for Order to Show Cause will also be denied.

Accordingly, the Court looks back to plaintiff's First Amended Complaint.  The Court's dismissal of nineteen defendants remains intact, leaving those defendants who filed motions for a more definite statement.  Because plaintiffs' have failed to adequately respond to this Court's Order granting defendants' motions for a more definite statement, and its instructions to file a motion for leave to file a second amended complaint that complied with the requirements noted by the Court, this Court concludes that this action should be dismissed.

## II.     BACKGROUND

This case is brought by three plaintiffs: John Cheeks, CNA, and Juanita Gallardo.  Plaintiffs Cheeks and CNA (of which John Cheeks is the principal owner) allege that they are the targets of a vast bid rigging conspiracy in which dozens of defendants—namely, other construction companies, their principals, and insurance entities—have engaged in antitrust and RICO violations.  Plaintiffs claim that the "Rodriguez(s)-Shrensky Family Rico Enterprise," along with an insurance carrier CNA Surety/CNA Financial, "unlawfully collude[ed] over the last 20 years in the District of Columbia[] to monopolize District of Columbia infrastructure cont[r]acts."[2]  Fourth

---

[2] Plaintiffs' Complaint is replete with spelling and grammatical errors.  Although this Court quotes from the Complaint and plaintiffs' other written submissions at length, it will not endeavor to correct every mistake.

Am. Compl. ¶ 1, ECF. No. 118-1.  According to plaintiffs' Complaint, the members of the alleged enterprise have engaged in "attempted murder, death threats[,] at least 2 likely murders, obstruction of justice, witness intimidation, [and] malicious prosecution" in order to continue monopolizing long-term contracts to the exclusion of minority business like CNA.  *Id.* at ¶ 1–2. The insurance carrier is alleged to have been "a willing accomplice because of multiple rake-offs received from insurance underwriting of each single contract." *Id.* at ¶ 2.  Plaintiff Gallardo alleges that she was once employed by a member of the alleged RICO enterprise, and that after witnessing collusion among members of the enterprise, she was targeted and framed for embezzlement, was denied her civil rights, and was prevented from testifying against the enterprise.  *Id.* at ¶ 28.

On May 19, 2014, plaintiffs filed their First Amended Complaint.  *See* Court's Oct. 17, 2014 Mem. Op. 3, ECF No. 67.  The following defendants filed motions to dismiss: Western Surety Company, Paul T. Bruflat (the "Western Surety defendants"); Committee on Transportation and the Environment, Phillip Mendelson, Mary M. Cheh, Jim Graham, David Grosso, Kenyan McDuffie, Tommy Wells (the "Council defendants"); and the Government of the District of Columbia, Mayor Vincent Gray, the Executive Office of the Mayor, the D.C. Department of Small and Local Business Development, Robert N. Summers, Harold B. Pettigrew Jr., the District of Columbia, James D. Staton, the Department of Transportation, and Terry Bellamy (the "District defendants").  *Id.* at 2.  The other defendants filed motions for a more definite statement: Fort Myer Construction Corp., Francisco Rodrigues Neto, Jose Rodrigues(z), Lewis Shrensky, Anchor Construction Corporation, Florentino Gregorio, Cristina Rodrigues Minton, Dora Rodrigues Cooper, Civil Construction, and Capitol Paving of D.C.  *Id.* at 2.  This Court granted those motions and dismissed nineteen defendants from this case (the Western Surety defendants, the Council defendants, and the District defendants).  *Id.* at 13.  In response to various defendants' motions for

a more definite statement, this Court ordered plaintiffs to file a motion for leave to file a second amended complaint. *Id.* It specifically ordered plaintiffs to "provide[] a complete list of statutory violations alleged and which defendant(s) engaged in each violation, in an orderly, clear, and non-repetitive arrangement," and to "identif[y] all known defendants and plaintiffs and how each individual or entity named in the Second Amended Complaint and attached exhibits is involved in the violations raised by plaintiffs." *Id.* at 7–8.

Plaintiffs filed a Motion for Leave to file a Second Amended Complaint, ECF No. 72, but before the Court ruled on that motion, filed a Motion for Leave to file a Third Amended Complaint, and again, before the Court ruled, filed a Motion for Leave to File a Fourth Amended Complaint. Thus, the Court previously found that the Motion for Leave to file a Second Amended Complaint was moot, ECF No. 104, and now finds that the Motion for Leave to file a Third Amended Complaint is also moot. The Court now examines plaintiffs' Motion for Leave to File a Fourth Amended Complaint and the proposed Fourth Amended Complaint attached to that motion, as well as plaintiffs' attempts to bring claims against the insurance defendants, and plaintiffs' request for an order to show cause as to why a RICO entity should not be found to exist.

## III.    LEGAL STANDARDS

Parties have a right to amend their pleadings once as a matter of course. Fed. R. Civ. P. 15(a)(1). After this, a party may amend if the opposing party consents, or if the court grants leave. Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." *Id.* Whether to grant leave is within the discretion of the District Court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of

amendment." *Id.* "An amendment would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002).

If a party alleges that amendment would be futile because the amended complaint could not withstand a motion to dismiss, the court's "review . . . is, for practical purposes, identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 216 (D.C. Cir. 2010) (internal quotation marks omitted). To survive a 12(b)(b) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). Plaintiffs must provide more than labels, conclusions, or "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Plaintiffs bring claims for violations of RICO, 18 U.S.C. § 1962(c), for a RICO conspiracy, 18 U.S.C. § 1962(d), and for violations of the Sherman Antitrust Act and the Clayton Antitrust Act. To have standing under RICO, a plaintiff must claim that "he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Hourani v. Mirtchev*, 796 F.3d 1, 11 (D.C. Cir. 2015). RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," 18 U.S.C. § 1962(c), and to conspire to commit the above offense, 18 U.S.C. § 1962(d).  The elements of a civil RICO violation are "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity."  *Salinas v. United States*, 522 U.S. 52, 62 (1997).  "Racketeering activity," also known as "predicate acts" or "predicate offenses," is defined in a lengthy statutory provision which enumerates various criminal acts under both state and federal law.  *See* 18 U.S.C. § 1961(1).  Thus, plaintiffs must allege that the defendants committed predicate acts to state a civil RICO claim.  In addition, to succeed on a civil RICO claim, plaintiffs must also show proximate cause—"that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'"  *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010).  There must be "some direct relation between the injury asserted and the injurious conduct alleged.  A link that is too remote, purely contingent, or indirect[t] is insufficient."  *Id.* (internal citations and quotation marks omitted).

The elements of a RICO conspiracy claim are "that (1) two or more people agreed to commit a [18 U.S.C. § 1962(c)] offense, and (2) a defendant agreed to further that endeavor."  *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012). A court need not find that a defendant is liable for underlying RICO violations in order to find that he is liable for a RICO conspiracy.  *See United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 13, 18 (D.D.C. 2004) (citing *Salinas*, 522 U.S. at 66).  To be liable for conspiracy, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor."  *Salinas*, 522 U.S. at 65.

It is unclear what provisions of the Sherman Act and the Clayton Act that plaintiffs allege violations of; their Complaint merely mentions the Acts in their entirety.  The Clayton Act allows "any person injured in his business or property by reason of anything forbidden in the antitrust laws," which include both the Sherman Act and the Clayton Act, to recover damages.  *See* 15 U.S.C. § 15(a).  It appears that plaintiffs may be alleging general antitrust/monopolization violations under these Acts, *see* 15 U.S.C. § 1–2, or violations of the prohibition on interlocking directorates and officers, *see* 15 U.S.C. § 19.

## IV.    ANALYSIS

The major issue before this Court, which is analyzed first, is whether to grant leave to file a fourth amended complaint.  The Court first finds that granting leave to file a fourth amendment complaint would be futile because plaintiffs' claims are unable to survive a motion to dismiss, and that plaintiffs have repeatedly failed to cure the deficiencies in their complaints.  Second, the Court finds plaintiffs have failed to show cause as to why defendant CNA Surety should not be dismissed and that the insurance defendants should remain dismissed from this action.  Third, the Court finds that plaintiffs' request for an order to show cause as to why a RICO entity should not be found to exist is inappropriate.  Finally, the Court concludes that this action should be dismissed with prejudice.

### A.    Futility of Amendment for Failure to State a Claim

Defendants Dora Monica Rodrigues, Cristina Rodrigues Minton, Capitol Paving of D.C., Inc., Francisco Rodrigues Neto, Fort Myer Construction Corp., Jose Rodriguez, Lewis Shrensky, and Civil Construction LLC have filed oppositions to plaintiffs' motion for leave to amend.  *See* ECF Nos. 120, 122, 123, 124.  They all argue that amendment would be futile because the allegations in the amended complaint do not survive a Rule 12(b)(6) analysis.  Defendants Dora

Monica Rodrigues and Cristina Rodrigues Minton argue that the allegations against them "are utterly conclusory and lack any specific facts linking [them] to any actual wrongdoing." Defs. Dora Monica Rodrigues & Cristina Rodrigues Minton's Opp'n 2, ECF No. 120.  Defendants Capitol Paving of D.C., Inc. and Francisco Rodrigues Neto argue that plaintiffs have "continued to assert broad outlandish legal conclusions rather than pleading specific allegations of fact." Defs. Capitol Paving of D.C., Inc. & Francisco Rodrigues Neto's Opp'n 2, ECF No. 122.  Defendants Fort Myer Construction Corp., Jose Rodriguez, and Lewis Shrensky argue that "[p]laintiffs remain unable to connect any of the unsubstantiated actions imputed to the [d]efendants to a specific harm that has befallen them" and that "[i]t is abundantly clear that the failure of [p]laintiffs to be awarded public procurement contracts is solely the result of [p]laintiffs own actions, and therefore, any RICO claim is improper."  Defs. Fort Myer Construction Corp., Jose Rodriguez, & Lewis Shrensky's Opp'n 3, ECF No. 123.  Finally, defendant Civil Construction argues that "[p]laintiffs still have failed to allege any facts about what Civil purportedly did to cause injury to them," and that "[p]laintiffs fail to allege that Civil had anything to do with any of their other outrageous claims concerning alleged wrongful conduct by purported (and often unnamed) members of the RICO Enterprise." Def. Civil Construction's Opp'n 2–3, ECF No. 124.

In reply to the defendants' oppositions, plaintiffs argue that they have obtained new facts and added them to the complaint regarding witness/potential plaintiff Juanita Gallardo which "state more detail which links named Defendants, through the common ownership and/or management of the Enterprise to the obstruction of justice regarding Gallardo, her malicious prosecution and incarceration."  Pls.' Reply to Defs.' Opp'n 2, ECF No. 126.  They argue that some of the defendants are incorrect in arguing that plaintiffs would have never have received a contract award, stating that "if the alleged RICO family were disqualified for their actual illegal monopolistic

collusive bidding and perjured Non Collusion Affidavits, Plaintiff would have been the only bidder remaining and be entitled to the award." *Id.* at 5.  Plaintiffs further contend that they have complied with this Court's Opinion and Order of October 17, 2014 because they "specified and corrected charges against all RICO members and entities known to exist at this time," and "provided specificity as to dates, locations, events and persons in Exhibit K and body of the Proposed Third and Fourth Amended Complaints and stated claims upon which relief can be sought." *Id.* at 6.  In response to the defendants' arguments that the complaint contains no allegations that the defendants directly committed RICO violations, plaintiffs rely on the *Pinkerton* doctrine, which provides for "co-conspiratorial liability premised upon the defendants' facilitation and furtherance of the conduct of co-conspirators' engaging in the participation and conducting the affairs of the RICO enterprises." *Id.* at 7–8.  Finally, plaintiffs argue that the defendants failed to address claims independent of the RICO claims, citing the underlying illegal "predicate acts," and state law violations including "attempted murder, perjury, intimidation of witness, stalking and obstruction of justice." *Id.* at 9–10.

The Court finds that amendment here would be futile because plaintiffs have failed to sufficiently state claims for relief, and nothing indicates that they would be able to state claims for relief if allowed to amend in the future.  Plaintiffs have not sufficiently pleaded two elements of civil RICO claims: predicate acts and proximate cause.  With respect to their RICO conspiracy claims, plaintiffs have not sufficiently alleged the existence of any agreement, nor have they shown proximate cause.  Finally, plaintiffs have alleged virtually no facts supporting  their Sherman and Clayton Act claims.

### 1.    *Civil RICO*

Amendment would be futile because plaintiffs have failed to establish with particularity that the defendants committed the underlying predicate acts alleged, an essential element of RICO claims.  Plaintiffs generally allege the following categories of predicate acts: 1) violent criminal acts directed towards plaintiff Cheeks; 2) fraud committed in the course of submitting non-collusion affidavits as part of contract solicitations; 3) various violations in connection with the incarceration of plaintiff Gallardo; and 4) other criminal acts.  The Court will take each of these categories in turn.  In addition, plaintiffs have failed to allege proximate cause.

#### a)    *Predicate Acts*

##### i.    *Violent Criminal Acts towards Plaintiff Cheeks*

With regard to the violent criminal acts directed towards plaintiff Cheeks—including death threats, attempted murder, destruction of property, theft, stalking (in the name of witness intimidation), and witness retaliation (by doing the aforementioned acts)—the Complaint only alleges that an "unknown associate" of the alleged enterprise committed each of these crimes. Plaintiffs rely on the allegation that plaintiff Cheeks has "no other known enemies" to draw this conclusion.  Not a single defendant is named as the perpetrator of these crimes, and there are absolutely no facts supporting the inference that any of the defendants committed the crimes or directed others to do so.  These allegations fail to plausibly show that any defendant committed a necessary predicate act under RICO.

##### ii.    *Allegations Regarding Plaintiff Gallardo*

Next, plaintiffs claim that plaintiff Gallardo, who allegedly witnessed the enterprise's unlawful acts as an employee of defendant Dora Monica Rodrigues and Hawk Enterprises, "a now defunct shell company member of the RICO Enterprise," Fourth Am. Compl. ¶ 33, was essentially

framed for embezzlement by the defendants (a charge which resulted in her conviction and incarceration) so that she would be prohibited from testifying against the defendants in an unrelated case, therefore obstructing justice and tampering with a witness.  At various points throughout the Complaint, plaintiffs mention civil rights violations under 42 U.S.C. § 1983 committed by defendants against plaintiff Gallardo.  To the extent that plaintiffs are relying on these violations as predicate acts, this argument fails.  Section 1983 violations do not constitute racketeering activities and cannot form the basis of a RICO claim.  *See Taitz v. Obama*, 707 F. Supp. 2d 1, 6 (D.D.C. 2010).  In addition, the other allegations regarding plaintiff Gallardo are factually insufficient.  Plaintiffs claim that four of the defendants—Dora Monica Rodrigues, Cristina Rodrigues Minton, Christopher Kerns, and James Abely, "aided by others"—obstructed Gallardo's testimony in a different case alleging corruption and bribery against D.C. government officials and Fort Myer Construction, and framed her for false theft charges.  Fourth Am. Compl. ¶¶ 128–29.  They provide no additional facts beyond these conclusory statements that the defendants committed criminal acts to show how each of the defendants obstructed plaintiff Gallardo's alleged testimony or they framed her.  The chart purporting to detail the crimes of these defendants is similarly of no help.  It merely restates (in chart form) the conclusory allegations of obstruction of justice against these defendants.  *See* Chart of Criminal Violations, Pls.' Fourth Am. Compl. Ex. K, ECF No. 118-20.

Furthermore, the Complaint does not sufficiently allege that plaintiff Gallardo suffered a business injury.  It appears from the Complaint that as a result of these alleged activities directed at plaintiff Gallardo, she suffered injury in the form of improper incarceration and deprivation of her civil rights.  *See* Fourth Am. Compl. ¶¶ 129, 131.  Even if plaintiffs had sufficiently alleged the existence of the predicate acts regarding plaintiff Gallardo, "mere commission of the predicate

offenses" is "obviously not in itself a violation of § 1962." *Sedima, S.P.R.L.*, 473 U.S. at 496. Plaintiffs have failed to allege that plaintiff Gallardo suffered a business injury as a result.[3]  They only allege that "Gallardo was injured by activities designed to remove her as a viable witness by obstructing justice to cover-up illegal actions of the RICO Enterprise."  Fourth Am. Compl. ¶ 35. Plaintiff Gallardo appears to be seeking to litigate a claim for wrongful conviction and/or deprivation of civil rights, both of which occurred in the state of Maryland.   A RICO action revolving around a purported bid rigging scheme in the District of Columbia is clearly not the appropriate time or venue for such a claim.

### iii.    Fraud

Plaintiffs also claim that the defendants committed mail and wire fraud by signing non-collusion affidavits—defendants Jose Rodriguez(s), Francisco Rodrigues Neto, Florentino Gregorio, "and others"—or aided and abetted in the signing of the affidavits—Jason Shrensky, Lauren Shrensky, Manuel Fernandes, Anita Bonds, "and others."  Fourth Am. Compl. ¶ 115. These allegations appear to be the crux of plaintiffs' Complaint.  Plaintiffs essentially claim that defendants committed fraud by signing affidavits asserting that they had not colluded with others in connection with contract solicitations, when in fact they had committed such collusion, and then submitted those affidavits along with their bid proposals.  Fourth Am. Compl. ¶ 113–21.  Plaintiffs Cheeks and CNA were then allegedly excluded from being awarded those contracts, despite their status as low bidder.   Accordingly, plaintiffs argue that if the defendants were not engaging in illegal collusion or had been properly excluded from bidding, plaintiffs would have won the contracts.

---

[3] Merely stating that "[e]ach Plaintiff herein has been a victim of one or more of the unlawful RICO activities," Fourth Am. Compl. ¶ 25, is insufficient to allege that they have each suffered a compensable injury to his or her business.

Specifically, plaintiffs claim that the officials who signed the affidavits "would be unable to demonstrate an absence of the intent to deceive, as to the non-collusion requirement in the face of public records of interlocking ownership and board of directors of the allegedly colluding RICO entities," that "[e]vidence is available from witnesses to the effect [] the preparation of bids for many year has been accomplished on a joint basis, with discussions amongst bidders preceding the submission of coordinated bids," and that "[d]iscovery would increase specificity." *Id.* at ¶¶ 116, 120, 121. The chart attached to plaintiffs' Complaint, which purports to detail the alleged criminal violations of the enterprise, lists the individual who signed the affidavit, the contract solicitation at issue, the date of such solicitation (spanning from 2008 to 2013), and the location of the solicitation (*e.g.*, bid rooms). *See* Chart of Criminal Violations.

Because plaintiffs are alleging that the defendants committed fraud, they are subject to the heightened pleading standard of Rule 9(b). *See Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 108 (D.D.C. 2015). Plaintiffs must "stat[e] the time, place and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud." *Id.* (internal quotation marks omitted). Courts should exercise caution when considering RICO claims premised on fraud; they "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001).

Plaintiffs may successfully state the time and place of the alleged fraud in their criminal violations chart. They fall short, however, of successfully pleading the content of the false misrepresentations. Plaintiffs' claims of fraud are based solely on the claim that plaintiff Gallardo has evidence that the defendants were colluding to coordinate their bids. Fourth Am. Compl. ¶¶

120, 123.  There are several issues with this argument, all of which convince this Court that

plaintiffs have failed to satisfy Rule 9(b)'s pleading standard.  First, plaintiffs claim that Gallardo

"was in a key observational position as the accountant and confidant of 2 key enterprise members,"

and "[i]n this position, during the term of her employment, she had access to probative evidence

of the Enterprise's unlawful operations."  *Id.* at ¶ 122.  The Complaint states, however, that

Gallardo left her employment in 2005—three years *before* the first of the allegedly fraudulent non-

collusion affidavits was submitted in 2008 according to plaintiffs' own chart of criminal violations.

*See id.* at ¶ 124; Chart of Criminal Violations.  Second, the Complaint relies primarily on reference

to "Exhibit L," which purports to contain sworn statements of plaintiff Gallardo regarding the

alleged collusion among bidders.  After examining all of the attachments to the Fourth Amended

Complaint, however, the Court is unable to find any document labelled "Exhibit L," or any

document that contains the sworn statements of plaintiff Gallardo.[4]  Third, the other documents

referenced—the non-collusion affidavits and a chart constructed by plaintiffs showing the

---

[4] Plaintiffs have again made it difficult for this Court to discern their arguments.  The exhibits attached to the Fourth Amended Complaint are labelled numerically, but are referenced by letter in the Complaint.  Furthermore, the exhibits—once opened—are not labelled alphabetically.  The exhibits that are lettered—some inexplicably are lettered while others are numbered—use letters arbitrarily pulled from the content of the document.  The Court has nonetheless examined each exhibit and has not found an "Exhibit L" or an otherwise labelled exhibit containing the sworn statements of plaintiff Gallardo.

The Court has found a document labelled "Exhibit L" which claims to contain the sworn statements of plaintiff Gallardo attached to the Third Amended Complaint.  That exhibit is not an affidavit or an affirmation or any type of document signed by plaintiff Gallardo under penalty of perjury.  Rather, it appears to be written by plaintiffs' counsel of record in this matter, who claims that plaintiff Gallardo was duly sworn, and who has selectively excerpted pieces of a conversation he had with plaintiff Gallardo.  The Court will not accept this document as the sworn statements of plaintiff Gallardo.

The Court recognizes that for the purposes of dismissal for failure to state a claim, it must presume that all of plaintiffs' factual allegations are true, and that plaintiffs could submit a properly sworn affidavit from plaintiff Gallardo attesting to the allegations claimed.  Nonetheless, such an affidavit would not change this Court's conclusion that plaintiff Gallardo's allegations of collusion between 2002 and 2005 are unrelated to the claimed bid rigging of contracts beginning in 2008.  Furthermore, this Court doubts whether at the summary judgment stage the Court would find that a reasonable jury could find plaintiff Gallardo to be a credible witness.  As much as plaintiffs claim that plaintiff Gallardo is the victim of a framing, her conviction still stands; it has not been vacated or overturned.  A jury verdict for plaintiffs at trial based on such testimony is difficult to fathom.

relationships among the defendants—do not show fraud.  The non-collusion affidavits merely show that the defendants swore that they had not colluded with others in connection with the submission of bids; there is nothing in these documents showing that these statements were fraudulent.  *See* Non-Collusion Affidavits, Fourth Am. Compl. Attachment 1, ECF No. 118-3.  The chart of relationships among alleged members of the enterprise shows that the companies alleged to be part of the enterprise shared officers, some of whom were related; it does not clearly show that these individuals were improperly colluding and then lied about it in the non-collusion affidavits.  *See* Chart of Documented Interrelationships, Fourth Am. Compl. Ex. F, ECF No. 118-13.  Finally, merely stating that "[e]vidence is available" to show collusion (and therefore fraud) and that "[d]iscovery would increase specificity" is not sufficient.  Fourth Am. Compl. ¶¶ 120–21.  Plaintiffs bear the burden of sufficiently stating a plausible claim for relief in their Complaint; they cannot rely on facts that *may* be discovered in yet to be conducted discovery to meet this burden.  Therefore, the Court is essentially left with the conclusory statements that defendants were colluding and committing fraud, with no true factual allegations.  For these reasons, the Court finds that the allegations of fraud do not satisfy Rule 9(b)'s pleading standard.

### iv.    *Other Criminal Acts*

Finally, there are three allegations that do not fit comfortably in the previous categories, but that nonetheless fail to show the element of predicate acts.  First, plaintiffs claim that "at least 3 suspicious deaths of courier and security employees of Fort Myer Construction Corporation" have occurred under similar circumstances during the relevant period of time.  Fourth Am. Compl. ¶ 104–05.  There are no allegations that the deaths were committed by members of the alleged enterprise, or that they are connected to the alleged pattern of criminal acts here, or even that the deaths were the result of foul play.  It goes without saying that the statement that "[f]urther

discovery is necessary or criminal investigation to further detail these factual allegations," *id.* at ¶ 105, is insufficient to state a plausible claim on the face of the Complaint.

Second, plaintiffs state that members of the enterprise committed and were convicted of committing bribery.   Fourth Am. Compl. ¶ 107–109.   Specifically, it alleges that in 2002 Florentino Gregorio and C&F Construction Company (who is not a named defendant) were convicted of bribery, and that in 2003 Fort Myer Construction was convicted of bribery for acts taken in 1995–1998. *Id.* at ¶¶ 108–09.  There is no allegation—and no inference—that these crimes were part of the pattern of alleged racketeering activity aimed at plaintiffs, or in any way connected to the alleged bid rigging conspiracy at issue.  *See Ganzi v. Washington-Baltimore Reg'l 2012 Coal.*, 98 F. Supp. 2d 54, 57 (D.D.C. 2000) ("[A] Plaintiff must show that the predicate acts are related and that they 'amount to or pose a threat of continued criminal activity.'").

Third, plaintiffs allege that members of the alleged enterprise have intimidated D.C. officials and employees, and that "[o]n information and belief RICO members were instrumental in conjunction with Mayor Fenty, and Attorney General Peter Nickles in the firing of Stephen Amos, a District of Columbia whistle blower, employee who attempted to take action against Fort Myer Construction Corporation."  Fourth Am. Compl. ¶ 132.  Again, these conclusory allegations free of any factual detail are wholly insufficient to state a plausible claim.

In sum, plaintiffs have largely failed to sufficiently allege facts showing an essential element of a civil RICO claim: that the defendants committed the alleged predicate acts.

###### b)      *Proximate Cause*

Even if plaintiffs had sufficiently pleaded the existence of predicate acts committed by the named defendants, plaintiffs have failed to sufficiently plead another essential element of a RICO claim: causation.  To succeed on a civil RICO claim, plaintiffs must show proximate cause; there

must be "some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect[t] is insufficient." *Hemi Grp., LLC*, 559 U.S. at 9.

Plaintiffs allege that they have been the victims of bid rigging scheme in which defendants unfairly colluded and competed for infrastructure contracts. John Cheeks alleges that he was denied profitable contracts as a result. Fourth Am. Compl. ¶ 27. Remarkably, however, the Fourth Amended Complaint does not state which specific contracts plaintiffs were denied as a result of defendants allegedly illegal activity, nor does it state to whom such contracts were awarded. Nonetheless, the Court will assume that plaintiffs are complaining about the contracts or invitations for bids ("IFBs") listed in Exhibit K of the Complaint, which purports to list the criminal violations of each defendant. Those contracts and IFBs are: IFB 080020, IFB 090080, IFB 090020, DCKA-2013-B-0029, and DCKA-2009-B-0193. *See* Chart of Criminal Violations. Plaintiffs also attach two recent contract solicitations in which they claim to have been the low bidder: the aforementioned DCKA-2013-B-0029, and DCKA-2013-B-0007. *See* Two Recent Contracts wherein CNA, Inc was low Bidder, Pls.' Fourth Am. Compl. Ex. G, ECF No. 118-4.[5] Going even further, this Court has examined plaintiffs' exhibit of bid tabulations. It appears that

---

[5] These are also the IFBs and contracts listed in Exhibit A to plaintiffs' Fourth Amended Complaint, *see* Affidavit of Ronald J. Bonfilio, Pls.' Fourth Am. Compl. Ex. A, ECF No. 118-2, and Attachment 1, *see* Non-Collusion Affidavits, Fourth Am. Compl. Attachment 1, and Attachment 2, *see* Bid Bond, Pls.' Fourth Am. Compl. Attachment 2 Item 2, ECF No. 118-4.

The Court notes that plaintiff Cheeks submitted an affidavit in which he states that since 2002 he has bid on 15 IFBs in D.C., refers to the latest two bids which are the "subject of this complaint," and states that "[t]he prior about 13 contracts involve the same pattern of violations of RICO referred to herein." Cheeks Affidavit, Pls.' Fourth Am. Compl. Ex. CH, ECF No. 118-9. Given that Cheeks states that the two most recent bids (DCKA-2013-B-0029 and DCKA-2013-B-0007) are the subject of this Complaint, it is unclear whether he is in fact complaining about being denied any other contracts as a result of RICO violations. In addition, he has not named the other thirteen contracts, nor has he claimed that he bid against the defendants for them or that he was a low bidder.

plaintiffs bid against defendants in one more contract not previously listed: DCKA 2009-B-0025. *See* Invitation for Bid Solicitation Documents, Pls.' Fourth Am. Compl. Ex. D, ECF No. 118-10.

Plaintiffs' Fourth Amended Complaint never explicitly discusses causation. It never specifically claims that plaintiffs were not awarded these contracts (the apparent injury) as a result of defendants' racketeering activity. Plaintiffs appear to rest their argument on the statements of plaintiff Gallardo, *i.e.*, that the defendants colluded to coordinate their bids, then fraudulently attested to non-collusion in affidavits submitted with bids. Had defendants been excluded from bidding due to this allegedly fraudulent activity, plaintiffs claim that CNA would have been awarded the contracts. Plaintiff Gallardo allegedly had knowledge of this activity by reason of her employment with members of the enterprise. Again, as previously discussed, there are no sworn statements of plaintiff Gallardo attached to the Fourth Amended Complaint. More importantly, as stated in plaintiffs' Complaint, plaintiff Gallardo's employment with members of the enterprise ceased in 2005. Fourth Am. Compl. ¶ 124. The contracts and IFBs at issue occurred between 2008 and 2013, three years *after* plaintiff Gallardo claims to have observed collusion. Plaintiffs have failed to point to any contracts that they were not awarded as a result of collusion witnessed by plaintiff Gallardo.[6]

Furthermore, plaintiffs have failed to adequately respond to defendants' arguments that plaintiffs' failure to be awarded contracts was the result of its own actions, or of the actions of an entity not named in this lawsuit. *See* Def. Civil Construction LLC's Opp'n 2–3; Defs. Fort Myer Construction Corp., Jose Rodriguez & Lewis F. Shrensky's Opp'n 2–3; Defs. Capitol Paving & Francisco Rodrigues Neto's Opp'n 2. Plaintiffs' exhibits demonstrate that CNA was outbid on

---

[6] At one point plaintiffs identify the "time in question" as 2006–2012. Fourth Am. Compl. ¶ 132. At others, they somewhat vaguely allude to unlawful collusion over the last ten to twenty years. *See* Fourth Am. Compl. ¶¶ 1, 103. Still, however, the harm that plaintiffs' appear to be complaining of began in 2008. The Court cannot find any allegations that plaintiffs were harmed as a result of collusion or other illegal activity prior to 2008.

IFB 090020 by Nastos Construction, and was outbid on IFB 090080 by Corinthian Contractor, Invitation for Bid Solicitation Documents at 3, 4, neither of whom are named defendants in this action or named as part of the alleged RICO enterprise.   Another court in this district—in a different case brought by Cheeks against Fort Myers—previously confirmed these events.  *See Cheeks v. Fort Myer Const. Co.*, 722 F. Supp. 2d 93, 100 (D.D.C. 2010).   Clearly, plaintiffs' argument that "if the alleged RICO family were disqualified for their actual illegal monopolistic collusive bidding and perjured Non Collusion Affidavits, Plaintiff would have been the only bidder remaining and be entitled to the award," Pls.' Reply at 5, is belied by these facts.   There were others involved in the bidding process who plaintiffs have not named as part of the "RICO family." The actions of those companies are the clear cause of plaintiffs' "injury," *i.e.*, that they did not receive the contract awards.

With respect to the remaining contracts/IFBs, plaintiffs fail to respond to the argument that they did not receive these awards due to their own actions.  The District of Columbia procurement regulations state that the contracting officer may accept three forms of security: bonds provided by a surety, certified checks or irrevocable letters of credit, or U.S. government securities.   27 DCMR § 2700.4.  They also state that "[i]f a bid fails to comply with the bid security requirements set forth in the solicitation, the contracting officer shall reject the bid," but may accept the bid if "(a) The bid or proposal meets the criteria set forth in this section; and (b) Acceptance of the bid or proposal would be in the best interests of the District."  27 DCMR § 2701.1.  Plaintiffs do not state in their Complaint that they properly submitted bid security.  They do not claim in their Reply brief that they properly submitted bid security.  Plaintiffs' own exhibits show that DCKA 2009-B-0025, DCKA 2013-B-0007, and DCKA 2013-B-0029 were accompanied by checks, but plaintiffs do not argue that the contracting officer accepted the bid in accordance with Section 2701.1.

Furthermore, other courts in this District have found that plaintiffs' bids on IFB 080020 and DCKA-2009-B-0193[7] were rejected specifically because they failed to include the required bid security.  *See Cheeks v. Fort Myer Const. Co.*, 722 F. Supp. 2d 93, 99–100 (D.D.C. 2010); *Cheeks of N. Am., Inc. v. Fort Myer Const. Corp.*, 807 F. Supp. 2d 77, 94 (D.D.C. 2011), *aff'd*, No. 11-7117, 2012 WL 3068449 (D.C. Cir. July 26, 2012).

Rather, plaintiffs argue that "[m]inor matters involving cash bonds or bid bonds or adequate financing would have been routinely and easily cured."  Pls.' Reply at 5–6.  This wholly fails to respond to the argument that their bids simply did not comply with D.C. law.  Plaintiffs essentially argue that even though they submitted noncompliant bids, they would have nonetheless been awarded the contracts *if* defendants had been disqualified *and if* they had the chance to cure the defects in their bids *and if* the District then accepted the non-defective bids.  This line of inferences contains far too many contingencies to establish proximate cause.  *See Hemi Grp., LLC*, 559 U.S. at 9.

Furthermore, leaving aside any alleged fraud in bid submission process, the Complaint fails to allege that other predicate acts were the proximate cause of the injury to plaintiffs Cheeks and CNA.  With regard to the acts alleged to have been committed in the course of the prosecution and incarceration of plaintiff Gallardo, the Complaint states that the defendants "obstructed justice successfully by obstructing her probable testimony as an adverse witness in this case potentially fatal to the Enterprise."  Fourth Am. Compl. ¶ 128.  There are no allegations that these actions were the proximate cause of the injuries to plaintiffs Cheeks and CNA—the illegal monopolization

---

[7] Plaintiffs' exhibits show that plaintiff was also not the low bidder on this contract.  *See* Invitation for Bid Solicitation Documents.

of infrastructure contracts to the exclusion of plaintiffs Cheeks and CNA—nor are they even alleged to be the but for cause of the injuries.

Therefore, not only have plaintiffs failed to sufficiently allege facts showing that defendants committed predicate acts of racketeering activity, they have failed to plead that these acts were the proximate cause of harm to plaintiffs Cheeks and CNA.  Therefore, plaintiffs have failed to state a claim for civil RICO violations.

## 2.    *RICO Conspiracy*

Plaintiffs have also failed to sufficiently allege a RICO conspiracy (Claims Two, Three, and Four).  Plaintiffs allege that "at a time unknown" several of the defendants "conspired to violate [RICO] (i.e., each Defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise) through a pattern of racketeering, (i.e., the commission of acts indictable . . . all in violation of 18 U.S.C. § 1962(d))."  Fourth Am. Compl. ¶ 154.  They allege that all of the defendants are liable under the *Pinkerton* Doctrine.  *Id.*  The Court finds, however that plaintiffs have failed to allege both the existence of any agreements or that the conspiracy was the proximate cause of their injuries.

To plead a RICO conspiracy, plaintiffs must allege agreements—agreements to commit RICO offenses and agreements to further the endeavor to commit RICO offenses.  *See RSM Prod. Corp.*, 682 F.3d at 1048.  Plaintiffs here have failed to allege any facts directly showing such agreements.  In fact, the *only* time an agreement is even mentioned in the Complaint is in the excerpt quoted above, *i.e.*, the conclusory statement that each defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise.  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  There are no further details.

It is true that the Court may infer the existence of a conspiracy from the relationships and circumstances alleged.  *See e.g.*, *United States v. Mellen*, 393 F.3d 175, 191 (D.C. Cir. 2004) ("[A] conspiracy can be inferred from a combination of close relationships or knowing presence and other supporting circumstantial evidence."); *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 961 (7th Cir. 1996) ("A 'RICO conspiracy, like all conspiracies, does not require direct evidence of agreement; an agreement can be inferred from the circumstances.'").  The Court here is unable, however, to infer an agreement to commit RICO offenses or to infer an agreement to further the enterprise's endeavors to commit RICO offenses.  Beyond the conclusory allegations described above, the only factual allegations that would begin to allow the Court to infer the existence of a conspiracy are 1) that the members of the alleged enterprise had interlocking or overlapping directorates or officers; and 2) that they colluded to coordinate bids and shared employees and equipment, as attested to by plaintiff Gallardo.

Plaintiffs' second point—that plaintiff Gallardo witnessed collusion—suffers from the same defects as previously discussed.  Not only does the Fourth Amended Complaint not include as an exhibit actual sworn statements of plaintiff Gallardo, any collusion that she observed would be relevant to the time period prior to the termination of her employment in 2005, *not* the time period in which plaintiffs' allegedly conspired to rig bids and exclude plaintiffs from fairly competing for infrastructure contracts, the earliest of which occurred in 2008.  The Court therefore does not credit her statements as circumstantial evidence of a conspiracy during the relevant time frame.  In support of the first point, plaintiffs provide charts and tables that show the relationships among individuals associated with the companies at the center of the alleged conspiracy—Fort

Myer, Anchor Construction, Capitol Paving, and Civil Construction—and positions each held as officers of the aforementioned companies. *See* Chart of Documented Interrelationships; Defendants Affiliation Matrix, Fourth Am. Compl. Ex. O, ECF No. 118-22.  Plaintiffs also submit an affidavit of Ronald J. Bonfilio, a retired auditor once employed by the U.S. Government Accountability Office, who states that the relationships among members of the alleged enterprise "appear to be contradictive of claims of the affidavits of independence and non-collusion," and that "the long-term pattern contained in the documents examined appears to demonstrate that actual independence in bidding could not reasonably exist."  Affidavit of Ronald J. Bonfilio, Pls.' Fourth Am. Compl. Ex. A.  However, the non-collusion affidavits submitted by plaintiffs do not on their face state that the defendant companies did not have officers or board members in common; they state that the signatory company "has not, either directly or indirectly, entered, entered into any agreement, participated in any collusion, or otherwise taken any action in restraint of free competitive proposal submitted in connected with proposed contract."   Non Collusion Affidavits for IFBs.  The Court therefore disagrees that the non-collusion affidavits are clearly contradicted by the relationships among the companies.

Left only with allegations regarding the relationships among members of the alleged enterprise, parts of which do not indicate fraud or collusion at all, the Court finds that plaintiffs have failed to sufficiently allege circumstances from which it could infer the necessary agreements of a RICO conspiracy. *See RSM Prod. Corp.*, 682 F.3d at 1052 ("[B]ecause RSM failed to allege facts sufficient to support a plausible inference that Freshfields knew of and agreed to further the bribery-racketeering conspiracy, the complaint fails to state a claim against Freshfields for RICO civil conspiracy under § 1962(d)."); *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 27–28 (D.D.C. 2012) (finding that the plaintiffs failed to state a claim for conspiracy to violate RICO because they

"merely incorporate by reference their allegations of a single-event RICO violation based on alleged securities fraud committed by [defendants]" and "other than plaintiffs' conclusory allegations, plaintiffs have not set forth any allegations that any defendants agreed to further any such RICO conspiracy").

Moreover, plaintiffs have again failed to sufficiently allege proximate causation. Plaintiffs allege that the "conspiratorial conduct violates RICO § 1962(d), and such conduct caused direct injury to [p]laintiffs." Fourth Am. Compl. ¶ 156. This Court has already found, however, that plaintiffs failed to respond to defendants' arguments that plaintiffs' failure to be awarded the contracts at issue was the result of its own actions, or of the actions of an entity not named in this lawsuit, and that plaintiffs' have failed to sufficiently plead proximate causation. Therefore, even if the Court were to infer the existence of a conspiracy, plaintiff has still failed to state a claim for relief under Section 1962(d) for RICO conspiracy. *See Knit With v. Knitting Fever, Inc.*, No. CIV.A. 08-4221, 2011 WL 891871, at *11 (E.D. Pa. Mar. 10, 2011) ("[E]ven assuming arguendo that Plaintiff's allegations as to [defendant's] participation in the purported conspiracy to cover-up the initial fraud were adequate to allege a new RICO conspiracy under § 1962(d), Plaintiff cannot demonstrate that the cover-up was the proximate cause of its monetary losses.").

Plaintiffs' reliance on the *Pinkerton* Doctrine is misplaced. The *Pinkerton* Doctrine holds that members of a conspiracy are liable for reasonably foreseeable substantive criminal acts committed by other co-conspirators in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946). *Pinkerton* liability presupposes the existence of a conspiracy, and for a conspiracy to exist, the defendants must have agreed to commit a RICO offense. *See RSM Prod. Corp.*, 682 F.3d at 1048. As stated above, plaintiffs have failed to sufficiently allege the existence of a conspiracy, so the *Pinkerton* Doctrine is inapplicable.

### 3.    *Sherman and Clayton Acts*

Finally, plaintiffs have failed to sufficiently allege violations of the Sherman and Clayton

Acts (Claim Five).[8]   The only allegations with regard to the Sherman and Clayton Acts are as

follows:

> Plaintiffs allege the above facts and those that follow violate provisions of the Sherman
> Anti Trust Act and Clayton Acts in the continuation of the monopolistic practices. Two
> recent contracts and their bid tabulations demonstrate the Defendants companies still enter
> bids as independent companies, when they are not independent.  (*See Exhibit G and Exhibit
> D for previous bids*).   Furthermore the District of Columbia Government, Office of
> Contracting and Procurement accepted these bid demonstrating that the District of
> Columbia Government is aiding and abetting the RICO Enterprise in violating Federal Anti
> Trust law.

Fourth Am. Compl. ¶ 167.[9]   Again, plaintiffs rely on future discovery to demonstrate violations of

the statutes.  *Id.* at ¶ 168 ("The evidence on hand and to be gathered by minimal discovery shall

demonstrate to the extent required by statute, violation of 15 U.S.C. Chapter 1 Monopolies And

Combinations In Restraint of Trade.").  This is not the standard.  A plaintiff "must plead sufficient

facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support

the plaintiffs' allegations."  *Long v. Safeway, Inc.*, 842 F. Supp. 2d 141, 145 (D.D.C. 2012).  The

Court has already found that plaintiffs' RICO allegations are factually insufficient, and plaintiffs

have pleaded *no* additional specific facts with respect to their Sherman and Clayton Act claims.

These "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a

plausible claim for relief.  *Iqbal*, 556 U.S. at 678.[10]

---

[8] It is unclear from the Complaint which provisions of the Sherman and Clayton Acts plaintiffs are attempting to allege violations of.

[9] The District of Columbia government and the D.C. Office of Contracting and Procuring are no longer defendants in this action.

[10] To the extent that plaintiffs are alleging violations of the prohibition on interlocking directorates and officers under 15 U.S.C. § 19, which is again unclear, plaintiffs have not pleaded that each of the corporations has capital, surplus, and undivided profits aggregating more than the amount required by statute.  *See* 15 U.S.C. § 19(a)(1), (a)(5).

Plaintiffs have now filed five complaints[11] in this action and have had two years to adequately respond to this Court's October 17, 2014 Order.  Several of the amended claims are the same as those that have already been dismissed by this Court.  *Cf. BEG Investments, LLC v. Alberti*, 85 F. Supp. 3d 13, 27 (D.D.C. 2015) ("[T]he RICO and RICO conspiracy claims in Plaintiff's amended complaint are virtually identical to those previously considered and dismissed by this Court, reflecting only two changes.").  The other claims are factually insufficient or fail to plead essential elements.  Plaintiffs have not adequately responded to the arguments of the defendants who noted these deficiencies.  Furthermore, plaintiffs may not, as they have tried repeatedly to do, rely on the promise of evidence to be uncovered by hypothetical future discovery as a basis for bringing these claims.  *Cf. Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("Appellants argue that if allowed to proceed with their RICO claim, they would allege and prove facts entitling them to recovery under RICO.  But we are not told what those facts might be. Appellees, by contrast, assert that the complaint was fatally defective in that it failed to allege an enterprise, the elements of any predicate act, or legally cognizable injury to appellants; because each of these is required under RICO, and because appellants could not possibly make allegations to satisfy all of them, they argue, dismissal with prejudice under Rule 12(b)(6) was proper. We agree.").  The Court therefore finds that because plaintiffs' Fourth Amended Complaint cannot withstand a motion to dismiss under Rule 12(b)(6), amendment would be futile.  Plaintiffs' motion for leave to amend will be denied.

---

[11] Not to mention, Cheeks and CNA have previously brought similar claims against many of the same defendants in prior actions before another member of this District Court, and have lost.  *See Cheeks of N. Am., Inc. v. Fort Myer Const. Corp.*, 807 F. Supp. 2d 77 (D.D.C. 2011) (finding that plaintiffs either lacked standing or failed to state claims for violations of the Sherman Act, contract steering, violations on non-collusion affidavits, violations of procurement regulations, common law fraud and oversight failure, and tortious interference with business relations); *Cheeks v. Fort Myer Const. Co.*, 722 F. Supp. 2d 93 (D.D.C. 2010) (finding that plaintiffs lacked standing or failed to state claims for antitrust violations for bid rigging conspiracy, violations of WASA procurement regulations, tortious interference, violations of non-collusion affidavits, discrimination in bid solicitations, contract steering, oversight failure, and violations of civil liberties).

### B.    Failure to Cure Deficiencies

In addition to futility of amendment, courts may deny leave to amend for repeated failure to cure deficiencies.  *Foman*, 371 U.S. at 182.  This Court identified several issues with plaintiffs' First Amended Complaint and ordered plaintiffs two years ago to submit an orderly, clear, and non-repetitive Complaint which identified how each defendant was involved in the many alleged violations claimed by plaintiffs.  Plaintiffs have since submitted three amended complaints, but have been unable to satisfactorily comply with the Court's Order.  Plaintiffs still do not identify who committed many of the alleged crimes targeting plaintiff Cheeks (*e.g.*, attempted murder), they have included crimes and violations of the law that appear to have no relation to the injuries here (*e.g.*, bribery, deprivation of civil rights), and they rely on the statements of plaintiff Gallardo about alleged collusion that occurred at least three years before any alleged fraud took place.  Thus, the Court finds that not only would amendment be futile, plaintiffs' motion for leave to file an amended complaint will be denied because of plaintiffs' repeated failure to cure deficiencies.

### C.    The Insurance Defendants

After finding that amendment would be futile and that plaintiffs have failed to cure the deficiencies in their complaints, the court now turns to the issue of the insurance defendants. Plaintiffs originally brought claims against several insurance entities and individuals in their First Amended Complaint: Western Surety, CNA Surety, and Paul T. Bruflat.  This Court dismissed defendants Western Surety and Paul T. Bruflat from this action, and, finding that defendant CNA Surety had not been served, ordered plaintiffs to show cause why defendant CNA Surety should not be dismissed from this action under Rule 4(m).  Court's Oct. 17, 2014 Order, ECF No. 66; Court's Oct. 17, 2014 Mem. Op. 2 n.2.  Plaintiffs now attempt to add defendants Western Surety and Paul T. Bruflat back into this actions and to bring claims against "CNA Financial."

The Court first addresses its order to show cause why defendant CNA Surety should not be dismissed under Rule 4(m), issued on October 17, 2014.  Rule 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  FED. R. CIV. PROC. 4(m). Plaintiffs responded to the Court's order to show cause on December 17, 2014.  They argue that "it is very likely, as an ordinary and necessary business practice, that the parent company (CNA Surety) exercised some supervision over the actions of the officials of its subsidiary Western," but that due to lack of availability of discovery, "the success or failure of plaintiffs' effort to show cause as to why this action should not be dismissed with regard to CNA Surety depends upon whether the Court will allow plaintiffs to supplement the record for the specificity documentation held at this time, or not."  Pls.' Response to Court Order to Show Cause 3–4, ECF No. 73.  They then argue that the insurance companies are necessary parties and that "CNA Surety should not be dismissed from this case until all of the facts as to necessary parties are known."  *Id.* at 4.

Nowhere in plaintiffs' response do they address the crux of the issue or the Court's directive—why defendant CNA Surety should not be dismissed under Rule 4(m) for failure to timely serve.  In an apparent—and inexplicably belated—attempt to respond to the Court's Order, and to defendants' argument that CNA Surety is not a legal entity that can be served, plaintiffs now argue that CNA Financial Inc. is doing business as CNA Surety in the District of Columbia. Pls.' Reply to Defs. Western Surety & Paul T. Bruflat's Opp'n to Pls.' Mot. for Leave to File a Fourth Am. Compl. 4–5, ECF No. 121.  Plaintiffs appear to concede, however, that the entity they wish to sue is CNA Financial Corporation, not CNA Surety, stating "[o]n information and belief

the correct name of the Defendant entity appears to be CNA Financial Corporation." *Id.* at 5.[12]
Therefore, the Court finds that plaintiffs have not shown cause as to why defendant "CNA Surety"
should not dismissed.

The Court now turns to the claims against the insurance entities and individuals in the
Fourth Amended Complaint.  Plaintiffs now seek to bring claims against CNA Financial, and
attempt to add previously dismissed defendants Western Surety and Paul Bruflat back into this
action. *See* Fourth Am. Compl. ¶¶ 11, 44, 57, 58, 135–148.  This Court previously dismissed the
claims against Western Surety and Bruflat, finding that "Plaintiffs' irregular inclusion of facts
regarding activities of the . . . Western Surety defendants is not sufficient to make out a claim for
predicate criminal activity, much less a pattern of racketeering activity necessary for a RICO
claim" and that "[i]t is unclear precisely what predicate criminal activities the . . . Western Surety
defendants engaged in, if any." Court's Oct. 17, 2014 Mem. Op.  It also found that "with regards
to the Western Surety defendants, plaintiffs' allegations are consistent with lawful conduct [*i.e.*,
providing surety bonds]." *Id.* at 12.  Western Surety and Bruflat now argue that "the proposed
Fourth Amended Complaint contain[s] no substantive allegations that were not already addressed
by [d]efendants' Motion to Dismiss and this Court's Orders granting same," and that the
allegations now lodged against CNA Financial "are essentially the same as those that led to the
dismissal of Western and Mr. Bruflat and are a transparent attempt to circumvent this Courts
October 17, 2014 Orders."  Defs. Western Surety & Paul T. Bruflat's Opp'n 2, ECF No. 119.

---

[12] The confusing nature of plaintiffs' written submissions to this Court make it very difficult to determine their
argument.  They argue that "CNA Surety was served with a green card and signed for by someone" and that "CNA
Financial Corporation does business using the name CNA Surety," which does not have a registered agent in the
District of Columbia.  Pls.' Reply to Western Surety & Bruflat at 5.  It appears, however, that despite these arguments,
plaintiffs concede that the entity which they want to sue is CNA Financial Corporation, not CNA Surety.

The Court agrees with defendants.  The allegations against the insurance defendants in the First Amended Complaint—which led to the dismissal of defendants Western Surety and Paul Bruflat—are as follows: the insurance companies knew or should have known the facts relevant to the unlawful alleged acts committed by the enterprise and they had a duty to refrain from aiding and abetting or participating in those acts; the insurance defendants also knew or should have known of the alleged bid rigging conspiracy, the racketeering collaboration, interlocking directorates and management, and bribery as a result of information received from the enterprise; and as a result of joint bidding, the insurance defendants have held a monopoly on insurance for bid bonds and have profited from the bidding monopoly created by the enterprise.  First Am. Compl., ¶¶ 97–102, ECF No. 10-1.  The First Amended Complaint goes on to allege that the insurance defendants furnished bid bonds, knew or should have known that the bidders were in violation of their non-collusion affidavits, and knew that the D.C. government was being deceived because the purportedly competitive bids were actually being made by the same interlocking group.  *Id.* at 103–06.  Finally, the Complaint alleges that the unlawful acts committed by the enterprise would not have been possible, but for the actions of the insurance defendants.  *Id.* at 107–09.

The Fourth Amended Complaint makes essentially the same allegations, all of which center around the claim that the insurance defendants knew or should have known about illegal activity committed by the enterprise, and issued bid bonds anyway.  *See* Fourth Am. Compl. ¶¶ 135–48. The only apparent basis for this argument is that the insurance companies knew the owners/officers of the companies involved in the alleged enterprise.  Indeed, plaintiffs state that the question is "whether it is 'plausible' after doing more than 15 consistent years of substantial business with the

Fort Myer Construction Corporation's family of companies, the insurance companies knew their

owners, executives, and/or managers."  Fourth Am. Compl. ¶ 147.[13]

Again, these allegations are insufficient to demonstrate predicate criminal activity

conducted by the insurance defendants, or a pattern of racketeering activity.  Whether or not the

insurance defendants knew the owners of the construction companies—or whether they knew of

an alleged racketeering conspiracy—does not answer the question of whether the insurance

companies undertook predicate criminal acts (or a pattern of such) as required for RICO liability.

Knowledge of a racketeering activity alone is insufficient to impose RICO liability.  *See RSM*

*Prod. Corp.*, 682 F.3d at 1051 (finding that the complaint did not allege that the defendant itself

committed any predicate acts, that the plaintiff's argument relying on the defendant's "knowledge

of the bribery-racketeering conspiracy" was insufficient, and that the defendant's actions were

more likely explained by its normal business practices).

Furthermore, nowhere in plaintiffs' table of criminal violations do plaintiffs claim that

Western Surety or Paul Bruflat committed any criminal violation.  The only allegation against

CNA Financial Corp. is that it "aided and abetted fraud," apparently for the benefit of Fort Myer

Construction and Anchor Construction.  *See id.* at 6.  The Complaint states that "[b]y ignoring and

failing to report the well known collusion and inter-relationships of the RICO Enterprise, the

insurance company CNA Surety, during the time in question and to this day, aided and abetted the

RICO activities," and that "[b]ecause of the additional profits in premiums, it is plausible CNA

Financial Corporation knowingly aided and abetted the RICO Enterprise."  Fourth Am. Compl. ¶¶

---

[13] Plaintiffs argue that "[p]roof of [the allegation that the insurance defendants knew the owners/officers of the construction companies] and evidence supporting 'plausibility' could be established through a few depositions of CNA Surety, Western Surety's key personnel, and the construction companies."  Fourth Am. Compl. ¶ 148.  Again, plaintiffs' argument is wholly untenable and demonstrates a lack of understanding of the requirements of a properly pleaded complaint.  Plaintiffs do not get to make factually sparse and insufficiently pleaded claims in a complaint, and then ask for discovery to obtain the facts necessary to support those claims.

137, 139.  First, this Court has already found that defendants failed to sufficiently allege fraud by defendants Fort Myers and Anchor Construction, or that any such fraud was the proximate case of plaintiffs' injuries.  Furthermore, the conclusory statements that the defendants knew or must have known about unspecified and generic incidents of alleged perjury, collusion, and bid rigging are insufficient to state a claim for relief.  Finally, while it may be *possible* that CNA Financial aided and abetted the alleged enterprise in pursuit of profits from premiums, plaintiffs have not stated enough facts to "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

Plaintiffs attempt to save their argument by relying on the *Pinkerton* Doctrine.  Again, plaintiffs have failed to plead the existence of a conspiracy.  The Complaint does not allege with any level of particularity that the insurance defendants agreed to commit RICO violations, nor do any of the factual allegations support the inference that the insurance defendant agreed to join a conspiracy.  The *Pinkerton* Doctrine is therefore inapplicable and the insurance defendants cannot be liable for the criminal acts allegedly committed by other defendants.[14]

In sum, because plaintiffs have failed to show cause why CNA Surety should not be dismissed from this case, the Court will dismiss the entity designated as CNA Surety.  In addition, the Court finds that the allegations against Western Surety, Paul Bruflat, and CNA Financial are the same as those this Court already found to be insufficient, and that plaintiffs have failed to state plausible claims against the insurance defendants.

---

[14] The Court's conclusion regarding failure to state claims under the Sherman and Clayton Acts applies equally to the insurance defendants.

**D.      Plaintiffs' Request for Order to Show Cause**

Finally, plaintiffs also ask that this Court order the defendants to show cause as to why a RICO entity should not be found to exist.  They argue that the defendants have only offered unsworn statements that fail to sufficiently oppose the plaintiffs' "proffered probative evidence," whereas the plaintiffs have offered "sworn evidence and genuine documents."   Therefore, according to plaintiffs, "[t]o determine which set of facts are true, and which are false, the situation needs to be subjected to an evidentiary hearing."  This argument is absurd.  It is axiomatic that the plaintiff bears the burden of stating a claim in his complaint.  Defendants are under no requirement to essentially disprove a plaintiff's allegations at the pleading stage, particularly before the Court has even determined the operative complaint in the case.[15]  Defendants are furthermore under no obligation to provide "sworn evidence and genuine documents" at this stage.  The issues pending before the Court relate to whether plaintiffs should be granted leave to amend their complaint. Plaintiffs are attempting to reverse the burden of proof, short circuit this litigation, and jump to an evidentiary hearing where defendants are supposed to disprove the allegations in the complaint before the Court has even determined whether plaintiffs may proceed on the basis of their pleadings.  Plaintiffs have cited no legal authority mandating or even allowing the Court to take such an action.  Accordingly, the Court will not order the defendants to show cause as to why a RICO entity should not be found and plaintiffs' motion will be denied.

---

[15] Plaintiffs argue that it is "incorrect" and "misleading" for defendants to argue that "[p]laintiffs do not yet have an operative complaint on file." Pls.' Reply to Defs. Dora Monica Rodrigues & Cristina Rodrigues Minton's Opp'n to Pls.' Cross-Mot. for an Order to Show Cause 2, ECF No. 132.  Plaintiffs argue that they have addressed this Court's Order to provide specificity and that "[d]efendants continue to assert this false and misleading statement as if repeatedly stating an incorrect statement will make it true."  *Id.* at 3.  On the contrary, plaintiffs are guilty of asserting an incorrect statement as if it was true.  Until this decision of the Court, plaintiffs did not have an operative complaint on file due to the many times they have asked for leave to amend and file a new complaint.  It is furthermore not for plaintiffs to determine whether they have complied with this Court's October 17, 2014 Order.  That is the province of this Court.

### E.      Dismissal with Prejudice

Defendants have asked this Court to dismiss plaintiffs' case with prejudice.  Plaintiffs have inundated the docket in this case with five complaints,[16] along with clearly improper or premature requests for discovery and show cause orders.  Despite instructions from this Court to submit an orderly, clear, non-repetitive complaint that contains descriptions of how each defendant was involved in the alleged violations against the plaintiffs, plaintiffs have failed to do so.  Plaintiffs have moreover failed again to show proximate cause—that they were harmed due to the acts of the defendants as opposed to their own actions or the actions of others—and nothing convinces this Court that plaintiffs would be able to do so if given the chance to submit yet another amended complaint.[17]

Plaintiffs have had more than their fair share of attempts to bring comprehensible and plausible claims against the defendants.  They do not get another bite at the apple.  Furthermore, the volume of legal memoranda defendants have been forced to file to oppose plaintiffs' ever changing complaint is significant.  The Court cannot justify inflicting continuing costs on the defendants for what amounts to an exercise in futility.  The Court therefore finds that dismissal with prejudice is warranted here.  *See Hines*, 995 F.2d at 299 (upholding the dismissal with prejudice because "appellants effectively have had multiple bites at the apple already" and because "the law does not require the doing of vain things," and "appellants have yet to demonstrate that they can offer an amendment effective of a valid claim for relief"); *E. Sav. Bank, FSB v.*

---

[16] It appears that plaintiffs are gearing up once again to seek to amend their Complaint.  *See* Fourth Am. Compl. ¶ 205 ("Details of these actions over and above what is specified in this Complaint are expected to be the subject of further amended complaints subsequent to discovery.").

[17] Plaintiffs cannot complain that they were not on notice of this deficiency in their Complaint.  In response to plaintiffs' motion for leave to file a third amended complaint, several defendants raised the argument that plaintiffs had submitted noncompliant bids and that there was no causal relationship between plaintiffs' alleged injuries and the alleged conduct of the defendants.  Plaintiffs then filed a motion for leave to file a fourth amended complaint and, as the Court found, did not sufficiently address proximate cause.

*Papageorge*, 31 F. Supp. 3d 1, 22 (D.D.C. 2014) ("[D]ismissal with prejudice is warranted here since there are no allegations in the plaintiff's fifty-eight page complaint, based on facts gathered over thirteen years of litigation, that could give rise to legal liability under any of the theories advanced by the plaintiff."); *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 172 (D.D.C. 2013), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015) ("[F]inding that Plaintiffs have already had two bites at the proverbial apple, [the Court] dismisses the Amended Complaint with prejudice."); *Hamrick v. United States*, 775 F. Supp. 2d 140, 142 (D.D.C. 2011) (dismissing with prejudice because "given the virtually undecipherable nature of plaintiff's allegations, it would be near-impossible for defendants to determine whether plaintiff's current lawsuit actually involves 'the same claims or cause[s] of action' as any of his prior cases" and because "plaintiff's amended complaint merely 'recycles' the allegations set forth in his first complaint"); *Petrochem Insulation, Inc. v. N. California & N. Nevada Pipe Trades Council*, No. C-90-3628 EFL, 1992 WL 131162, at *12 (N.D. Cal. Mar. 19, 1992), *aff'd sub nom. Petrochem Insulation, Inc. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. of U.S. & Canada, Local Union No. 38, AFL-CIO*, 8 F.3d 29 (9th Cir. 1993) (dismissing with prejudice after finding that "multiple amendments have already been attempted; the Court's specific admonitions to the plaintiff have not been heeded; and the potential chilling effect on the right to petition guaranteed by the first amendment").

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that amendment would be futile and that plaintiffs have repeatedly failed to cure the deficiencies in their complaints.  Plaintiffs' Motion for Leave to File a Third Amended Complaint will be denied as moot, and plaintiffs' Motion for Leave to File a Fourth Amended Complaint will be denied, along with plaintiffs' attempt to add defendants Western Surety and Paul T. Bruflat back into this action.  Plaintiffs have also failed to

show cause as to why defendant CNA Surety should not be dismissed, and the Court has found that the allegations against CNA Financial are insufficient to state a claim.

The Court accordingly looks to plaintiffs' First Amended Complaint.  Having already dismissed nineteen of the defendants listed in the First Amended Complaint—and finding that the insurance defendants should not be joined back into this action—the Court is left with the defendants that previously filed motions for a more definite statement: Fort Myer Construction Corp., Francisco Rodrigues Neto, Jose Rodrigues(z), Lewis Shrensky, Anchor Construction Corporation, Florentino Gregorio, Cristina Rodrigues Minton, Dora Rodrigues Cooper, Civil Construction, and Capitol Paving of D.C.  Because this Court will not allow further amendment and plaintiffs have failed to comply with the Court's October 17, 2014 Order to provide a more definite statement and file an amended complaint that states a claim upon which relief may be granted, these remaining defendants will be dismissed.  The Court will dismiss the entire action with prejudice.

In addition, plaintiffs' Cross Motion for Order to Show Cause as to Evidence Adduced Supporting RICO Existence and Violations of Law will be denied.  A separate Order accompanies this Memorandum Opinion.


Date: November ___, 2016

Royce C. Lamberth
United States District Judge